**FILED**

**June 23, 2017**

**IN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:20 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| WESLEY L. SOLES,<br>　　　　　Employee,<br><br>v.<br><br>KIRKLAND'S PEST CONTROL,<br>　　　　　Employer,<br>and<br>STARNET INSURANCE COMPANY,<br>　　　　　Carrier. | )　Docket No.: 2016-03-0991<br>)<br>)<br>)<br>)　State File No.: 72908-2016<br>)<br>)<br>)　Judge Pamela B. Johnson<br>) |

## EXPEDITED HEARING ORDER
## DENYING WORKERS' COMPENSATION BENEFITS

This matter came before the undersigned Workers' Compensation Judge on May 31, 2017, for an Expedited Hearing. The central legal issue is whether Wesley Soles demonstrated that he is likely to prevail at a hearing on the merits that his August 30, 2016 injury arose primarily out of and in the course and scope of his employment with Kirkland's Pest Control. For the reasons set forth below, the Court holds Mr. Soles did not carry his burden of proof. Thus, the Court denies his claim for temporary disability and medical benefits at this time.

### History of Claim

Mr. Soles worked for Kirkland's as a pest control technician. His job duties required him to spray for bugs at residential and commercial properties. In performing his job duties, he carried a canister of insecticide weighing up to fifty pounds and often descended and ascended stairs to reach the properties.

On or about August 26, Mr. Soles suffered a flare up of gout in his left knee and left foot. During this time, he continued to work as scheduled on August 26 and August 29, but he wore a wrap on his knee to help with the gout pain. During this time, he also walked with a limp due to his gout pain. On August 30, he reported to work without the wrap on his knee, as he was able to move more and his pain had improved.

1

During his workday on August 30, Mr. Soles provided pest control services to the cabins at Big Ridge State Park. While descending stairs at a cabin and carrying the canister of insecticide, he "heard a pop" and "felt a gush of pain" in his left knee when he stepped from one step to the next. Mr. Soles denied that he stumbled, fell, slipped, or tripped and further denied that his left knee gave way. He also denied that there were any obstacles or defects to the stairs. He further indicated that, as far as he knew, carrying the canister of pesticide did not cause his injury, but he acknowledged that he is not a medical expert. He reported the work incident to D.R. Kirkland upon his return to the office.

Mr. Soles was scheduled to see his primary care provider at Mountain Hope Good Shepherd Clinic on September 1, to follow-up on unrelated medical conditions, including the gout in his left knee and left foot. During this visit, he told the attending provider, Barbara Z. Kwaasny, APN, of the work incident, and she rendered a diagnosis of acute left knee pain. Ms. Kwaasny further recommended the use of crutches and a knee brace, and she placed Mr. Soles on restricted duty, including no use of left leg and sedentary work only. Mr. Soles returned to modified work the next day.

Kirkland's then provided Mr. Soles with a panel of physicians, and he selected Rocky Top Medical Clinic. On September 7, Mr. Soles attended an authorized visit at Rocky Top Medical Clinic and saw Dr. Steven Johnson. Mr. Soles reported the work incident to Dr. Johnson, who diagnosed left knee pain and ordered physical therapy. Dr. Johnson further recommended work restrictions. At this visit, Mr. Soles indicated he was required to pay $100 out-of-pocket because he did not have a claim number; he denied ever being reimbursed for this expense.

Through early September, Mr. Soles continued working modified duty; his last day worked was September 19. He also continued to treat with his primary care provider at Mountain Hope on September 20 and September 29, and received a diagnosis of right knee and leg pain with swelling following left knee pain and use of crutches. The attending provider instructed Mr. Soles to see the workers' compensation physician.

Mr. Soles returned to Dr. Johnson, the authorized physician, on September 30, with continued complaints of left knee pain as well as swelling in the right leg. The medical report noted a comorbid disease of gout in the left knee and foot. Dr. Johnson recommended continued physical therapy and placed Mr. Soles off work completely until he was evaluated and cleared by an orthopedic physician.

Based upon the referral by Dr. Johnson, Mr. Soles saw Dr. Rick Parsons at Tennessee Orthopedic Clinic for an authorized orthopedic evaluation on October 6. Dr. Parsons evaluated Mr. Soles and noted an impression of "rule out left medial meniscal tear versus superficial deep venous thrombosis." Dr. Johnson recommended an MRI of the left knee and kept Mr. Soles off work. Mr. Soles attended the left knee MRI on

2

October 8, which demonstrated a linear intrasubstance tear involving the medial portion of the patellar tendon with underlying tendinopathy.

Subsequently, Kirkland's carrier issued a Notice of Denial of Claim for Compensation on October 12 and again on October 24. Kirkland's based its denial claiming the defense of idiopathic incident. Additionally, on October 21, Kirkland's sent correspondence to Mr. Soles instructing him to return to work immediately or submit his resignation if unable to perform the duties he was hired to do.

Mr. Soles sought his own evaluation with orthopedic physician, Dr. Alan Whiton, on October 25. After Mr. Soles provided a history of the August 30 work incident and occasional episodes of gout, Dr. Whiton reviewed the MRI and performed a physical examination. Dr. Whiton diagnosed patellar tendon strain and recommended immediate commencement of physical therapy. Mr. Soles advised Dr. Whiton that he could not afford physical therapy, so Dr. Whiton did not write an order for physical therapy. Dr. Whiton instructed Mr. Soles to follow up with him if Kirkland's approved treatment or if he decided to pursue treatment on his own. For his evaluation with Dr. Whiton, Mr. Soles testified he paid $200 out-of-pocket, for which he seeks payment.

As to his work status, Mr. Soles testified he is unable to return to work due to his left knee injury. He indicated he no longer requires the use of crutches but still experiences pain. He further indicated he developed right knee pain due to favoring his injured left knee. He denied prior orthopedic treatment or prior surgery recommendations for his left knee. He also denied any prior diagnoses of a tear to his left knee.

### Findings of Fact and Conclusions of Law

The following legal principles govern the Court's analysis of this claim. In order to ultimately prevail, Mr. Soles bears the burden of proving all essential elements of his claim by a preponderance of the evidence. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At an Expedited Hearing, however, his burden of proof is lower and requires him only to come forward with sufficient evidence from which this Court can determine that he is likely to prevail at a hearing on the merits. *See McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). This lesser evidentiary standard does not relieve Mr. Soles of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015).

With the above principles in mind, the term "injury" is defined as "an injury by

accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." *Id.*

Here, there is no question that Mr. Soles was acting in the course and scope of his employment when he descended steps while carrying a canister of pesticide, and he experienced pain in left knee. Instead, Kirkland's asserts that Mr. Soles' injury did not arise out of the employment because the injury was idiopathic in nature and/or the result of a pre-existing condition.

Addressing the idiopathic in nature defense first, the Court notes, "An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *McCaffery v. Cardinal Logistics*, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *9 (Dec. 10, 2015) (internal citations omitted).

In *McCaffery,* the Workers' Compensation Appeals Board noted, "An injury that occurs due to an idiopathic condition is compensable 'if an employment hazard causes or exacerbates the injury.'" *McCaffery*, at *10-11, (citing *Phillips v. A&H Constr. Co.*, 134 S.W.3d 145, 148 (Tenn. 2004)). The Appeals Board further noted that "cause" means the accident originated in the hazards to which the employee was exposed as a result of performing his job duties. *Id.* Thus, the focus is on the causal link between the employment and the accident or injury, rather than a causal link between the employment and the idiopathic episode. *Id.*

For Mr. Soles to prove that his injury arose primarily out of his employment, he must prove a condition or hazard incident to his employment caused or exacerbated his injury. *Id.*; s*ee also Osborne v. Beacon Transport, LLC, et al.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 49, at *6-7 (Sept. 27, 2016). The relevant inquiry is not what caused the alleged idiopathic condition or event, but what caused the injury. *Frye v. Vincent Printing Co., et al*, 2016 TN. Wrk. Comp. App. Bd. LEXIS 34, at *13 (Aug. 2, 2016).

Numerous Tennessee cases have dealt with idiopathic injuries, several of which involved work injuries claimed while ascending or descending steps. Examples of injuries deemed idiopathic by the Supreme Court include an unexplained seizure or fainting episode, *see, e.g.*, *Sudduth v. Williams*, 517 S.W.2d 520, 523 (Tenn. 1974), and a knee "giving way" resulting in a fall, *see, e.g.*, *Greeson v. Am. Lava Corp.*, 392 S.W.2d 931, 934-35 (Tenn. 1965). An injury caused by purely personal conditions, as opposed to an employment condition, qualifies as idiopathic. *See* Thomas A. Reynolds, 20 Tennessee Practice Tennessee Workers' Compensation Practice and Procedure with Forms, § 10:7 (2005). An injury may arise out of employment, however, if causally

4

related to the activity required by the employer, even if that activity bears no relationship to the normal work duties of the employee. *Young v. Taylor-White, LLC*, 181 S.W.3d 324, 329 (Tenn. 2005).

In this case, the parties rely heavily on the cases of *Martin v. Flagship Airlines*, No. 01S01-9310-CH-00145, 1994 WL 902440 (Tenn. Workers' Comp. Panel June 27, 1994); *McConkey v. Vonore Police Dep't.*, 2006 Tenn. LEXIS 204 (Tenn. Workers' Comp. Panel Mar. 21, 2006); *Dickerson v. Sarl*, 2007 Tenn. LEXIS 916 (Tenn. Workers' Comp. Panel May 29, 2007); and *Veler v. Wackenhut Servs.*, 2011 Tenn. LEXIS 78 (Tenn. Workers' Comp. Panel Jan. 28, 2011).

Mr. Soles argues the cases of *Martin, McConkey,* and *Veler* are analogous to the case before this Court. However, in each of the cases of *Martin, McConkey,* and *Veler,* the Special Workers' Compensation Appeals Panel found the alleged injuries compensable and awarded benefits, with consideration given to the remedial purpose of the Workers' Compensation Law in place at that time. However, the Appeals Board has noted, "Reliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes[.]" *McCord*, at *13, n.4.

Conversely, Kirkland's seeks the Court's application of the opinions of *Greeson* and *Dickerson*. In both *Greeson* and *Dickerson*, the employees had a long history of knee problems. Mr. Greeson had a prior work injury, underwent surgery to remove a tumor from his lower spine, and suffered significant atrophy of the involved leg. Mr. Dickerson had two prior surgeries on the involved knee and walked with a limp at the time the injury occurred.

Here, Mr. Soles stepped down onto his left foot while descending stairs, felt a gush of pain in his left knee, and heard a pop. There is no evidence the stairs were defective. He did not slip, trip, or fall. He further did not think that carrying the canister of pesticide caused his injury, but acknowledged that he is not a medical doctor. Although in the days leading up to the work incident Mr. Soles suffered gout in his left knee, he denied any other prior problems with his left knee. He further denied receiving orthopedic treatment for his left knee or receiving a diagnosis of a left knee tear prior to the work incident. Upon careful consideration, at this time, this Court cannot find that Mr. Soles is likely to prevail at a hearing on the merits in establishing that a condition or hazard incident to his employment caused or exacerbated his injuries as required by *McCaffery* and *Osborne*. *See also English v. G4S Secure Solutions, et al.*, 2016 TN. Wrk. Comp. App. Bd. LEXIS 48 (Sept. 27, 2016). Therefore, his requests for workers' compensation benefits are denied at this time.

For the reasons set forth above, it is unnecessary for the Court to address the remaining issues.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Soles' claim against Kirkland's Pest Control and its workers' compensation carrier for the requested workers' compensation benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on **August 1, 2017**, at **9:30 a.m. Eastern Time**. The parties must call 865-594-0091 or 855-543-5041 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

**ENTERED this the 23rd day of June, 2017.**

_Pamela B Johnson_

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Initial Response in Opposition to Employee's Request for Expedited Hearing
5. Employer's Motion for Continuance
6. Employer's Motion to Compel Discovery
7. Notice of Filing Pre-Hearing Brief
8. Order Granting Motion to Continue and Motion to Compel and Order Setting Case for Status Conference
9. Notice of Filing Wage Statement
10. Agreed Order Extending Time for Employee's Discovery Responses
11. Order Setting Expedited Hearing
12. Pre-Hearing Brief of Employee, Wesley Soles
13. Employer's supplemental Prehearing Brief
14. Employee's Motion to Strike
15. Employee's Motion to Amend Dispute Certification Notice
16. Employer's Response to Motion to Amend Dispute Certification Notice
17. Employer's Response to Motion to Strike
18. Order Granting Employee's Motion to Amend Dispute Certification Notice
19. Order Denying Employee's Motion to Strike

20. Notice of Filing Medical Records of Mountain Hope Good Shepherd Clinic

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
1. Affidavit of Wesley L. Soles
2. Affidavit of Lorie Hale
3. Affidavit of Thomas Hobbs
4. First Report of Work Injury, Form C-20
5. Wage Statement(s), Form C-41
6. Notice of Denial of Claim for Compensation, Form C-23, dated October 12, 2016
7. Notice of Denial of Claim for Compensation, Form C-23, dated October 24, 2016
8. Kirkland's Pest Control Pay Stub for Pay Period of 09/01/16 – 09/15/16
9. Mr. Soles' Timeline of Scheduled Events
10. Mr. Soles' Requests for Temporary Total Disability Benefits
11. Mr. Soles' Handwritten Statement
12. Mr. Soles' Description of Job Responsibilities
13. Kirkland Pest Control Correspondence, dated October 21, 2016
14. Medical Record of Outpatient Diagnostic Center
15. Table of Contents of Medical Records:
    - Mountain Hope Good Shepherd Clinic
    - Covenant Health
    - Rocky Top Medical Center
    - Tennessee Orthopedic Clinic
16. Mr. Soles' Injury Statement

Stipulations
The parties stipulated to the following: the existence of an employment relationship; notice of the date of injury; and a weekly compensation rate of $313.73.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of June, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Garry Ferraris, Esq. Employee's Attorney | | | X | GFerraris@ferrarislaw.com |
| Alex B. Morrison, Esq. Employer's Attorney | | | X | ABMorrison@mijs.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov